Lewis J. Saul, Esq.
Kevin M. Fitzgerald, Esq.
Edward A. Coleman, Esq.
LEWIS SAUL & ASSOCIATES, P.C.
183 Middle Street, Suite 200
Portland, ME 04101
Phone: (207) 874-7407
Fax: (207) 874-4930
* pro hac vice

*Attorneys for Plaintiff Lewis Saul &
Associates, P.C.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



| | | |
|---|---|---|
| LEWIS SAUL & ASSOCIATES, P.C., | : | |
| | : | |
| Plaintiff, | : | Civil Action No. |
| | : | |
| v. | : | COMPLAINT AND DEMAND FOR |
| | : | PRELIMINARY AND PERMANENT |
| MARCHEX, INC., MARCHEX VOICE | : | INJUNCTIVE RELIEF, BREACH OF |
| SERV., INC., BODITION, INC. | : | CONTRACT, GROSS NEGLIGENCE, |
| | : | NEGLIGENCE, AND CONVERSION |
| Defendants. | : | |
| | : | JURY TRIAL DEMANDED |

Plaintiff Lewis Saul & Associates, P.C., by and through its attorneys, brings this civil

action against Defendants Marchex, Inc. and Marchex Voice Services, Inc. (hereafter

collectively as "Marchex"), and Bodition, Inc. ("Bodition") (all defendants collectively as

"Defendants") seeking preliminary and permanent injunctive relief and damages, and in support

thereof alleges as follows:

## INTRODUCTION

1.      This action arises out of Defendants' breach of contract, gross negligence, and

conversion of property related to Plaintiff's exclusive right to the use of the toll-free telephone

number 877-LAWSUIT (the "Toll-Free Number"), for which Plaintiff seeks preliminary and permanent injunctive relief, and monetary damages.

2.      As described herein, Plaintiff obtained the exclusive right to use the Toll-Free Number several years prior to the events giving rise to this action.  Plaintiff utilized the Toll-Free Number in a national advertising campaign conducted on its behalf by Cohn & Moscarelli Marketing & Communications, Ltd. ("C&M").   In order to use the Toll-Free Number in the advertising campaign, C&M notified Plaintiff that the telephone service company attached to the Toll-Free Number needed to be changed from Verizon to Marchex.  Plaintiff authorized the new designation by signing a form furnished by Marchex, and Marchex took control of service for the Toll-Free Number.

3.      On or about January 20, 2011, Marchex released the Toll-Free Number to the national 800 Service Management System database ("800/SMS Database") without authority and without Plaintiff's knowledge or consent.

4.      On or about January 22, 2011, Bodition misappropriated and obtained control of the Toll-Free Number.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs, and because there is complete diversity of citizenship between the Plaintiff and all Defendants.

6.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391 in that (i) Defendants do business in New York by offering services in this district, and thus are subject to personal

jurisdiction in this district; and (ii) the events or omissions giving rise to the claims alleged in this action occurred in this judicial district.

## PARTIES

7.      Plaintiff Lewis Saul & Associates, P.C. is a law firm incorporated in Washington, D.C., with its principal place of business located at 183 Middle Street, Suite 200, Portland, Maine 04101 and an office in New York, NY.

8.      On information and belief, Defendant Marchex, Inc. is a Washington corporation with its principal place of business located at 520 Pike Street, Suite 2000, Seattle, WA, 98101. On information and belief, at all times relevant herein, Defendant Marchex, Inc. was a provider of internet, marketing, telephone and call tracking services and analytics.  Marchex, Inc. is the parent company of Marchex Voice Services, Inc.

9.      On information and belief, Defendant Marchex Voice Services, Inc., is a Pennsylvania corporation with its principal place of business located at 1315 Walnut Street, Suite 1532, Philadelphia, PA 19107.  On information and belief, at all relevant times herein, Marchex Voice Services, Inc. was a provider of call tracking services, pay per phone call technologies, and call-based advertising products and analytics.  Marchex Voice Services, Inc., is a subsidiary of Marchex, Inc.

10.     On information and belief, Defendant Bodition, Inc. is a corporation with its principal place of business in a state other than New York.  On information and belief, at all times relevant herein, Bodition, Inc. was actively engaged in business activities throughout the United States, including the State of New York.

## GENERAL ALLEGATIONS

11.     Since at least January 2007, Plaintiff has been the assignee and exclusive, end user and subscriber of the toll-free telephone number 877-LAWSUIT.

12.     Plaintiff obtained the rights to use the Toll-Free Number pursuant to its agreement for telephone services with Verizon.

13.     Since at least January 2007 through and including the present, Plaintiff has paid Verizon a monthly fee for its exclusive use of the Toll-Free Number.

14.     The rights to use the Toll-Free Number constitute a valuable property, as it is a highly visible and memorable toll-free telephone number, offering the maximum potential to communicate with prospective clients for Plaintiff's services.   Plaintiff believes it has lost substantial income as a result of the loss of the Toll-Free Number.

15.     In or around September 2009, Plaintiff engaged in a nationwide campaign to advertise to potential clients and utilized C&M to develop the advertising strategy and implement the advertising campaign, including purchasing advertising from various media outlets on Plaintiff's behalf and directing responsive telephone calls to a call center.

16.     As 877-LAWSUIT is a highly visible and memorable telephone number, Plaintiff sought to use the Toll-Free Number in the advertising campaign.

17.     On or about September 15, 2009, Plaintiff was informed by C&M that in order to use the Toll-Free Number in the advertising campaign, Plaintiff was required to change telephone service providers for the Toll-Free Number from Verizon to Marchex.   C&M stated that the service change was necessary in order to route responsive telephone calls through a call-tracking system to a designated call center.

4

18.     On or about September 18 2009, Plaintiff agreed to switch telephone service providers for the Toll-Free Number from Verizon to Marchex, while at all times maintaining the exclusive right to use the Toll-Free Number.

19.     At Marchex's request, Plaintiff signed a Letter of Authorization provided by Marchex for the limited purpose of switching telephone service providers so that the Toll-Free Number could be used in the advertising campaign.  The signed Letter of Authorization was returned to Marchex.

20.     Pursuant to the Letter of Authorization, the only individual with authority to act for Plaintiff with respect to the Toll-Free Number was Kevin M. Fitzgerald, an attorney employed by Plaintiff.

21.     At no time did Mr. Fitzgerald authorize Marchex to release the Toll-Free Number to the 800/SMS Database.

22.     Thereafter, Plaintiff's advertising campaign was conducted by C&M utilizing the Toll-Free Number.

23.     Following the completion of the advertising campaign, responsive phone calls to the Toll-Free Number diminished significantly, although Plaintiff continued to maintain exclusive rights to use the Toll-Free Number.

24.     On or about August 30, 2010, C&M contacted Plaintiff regarding possible cancellation of additional toll-free telephone numbers other than 877-LAWSUIT that had been used in the advertising campaign, which were continuing to incur monthly service charges.

25.     On or about August 31, 2010, Lewis J. Saul, Esq. responded via email authorizing the release of the additional toll-free telephone numbers other than 877-LAWSUIT that had been

used in the advertising campaign and was expressly assured at that time that Plaintiff would retain the exclusive rights to the Toll-Free Number.

26.     At no time did Mr. Saul authorize Marchex to release the Toll-Free Number to the 800/SMS Database. Further, Mr. Saul was not the individual designated with the authority to authorize the release of the Toll-Free Number on behalf of Plaintiff.

27.     Upon information and belief, on or about August 31, 2010, C&M contacted Marchex to release the additional toll-free telephone numbers other than 877-LAWSUIT that had been used in the advertising campaign.

28.     Upon information and belief, on or about January 20, 2011, Marchex released the Toll-Free Number to the 800/SMS Database, despite failing to obtain any authorization whatsoever whether signed, written or oral from Plaintiff's designated representative, Mr. Fitzgerald.

29.     On or about January 22, 2011, Bodition acquired the Toll-Free Number from the 800/SMS Database despite Plaintiff's retention of the exclusive right to use the Toll-Free Number.

30.     Upon information and belief, the Toll-Free Number was not in active use by Bodition until Marchex made inquiries regarding the Toll-Free Number in March 2012. Bodition then placed a nondescript recorded message on the Toll-Free Number which failed to identify the individual or business being called and asked callers to leave a message.

31.     Upon information and belief, Bodition's control of the Toll-Free Number constitutes "warehousing" and "hoarding" in violation of the regulations of the Federal Communications Commission ("FCC") regarding toll-free numbers (47 C.F.R. § 52.105 and 47 C.F.R. § 52.107, respectively).

6

32.    Plaintiff learned for the first time of the unauthorized release of the Toll-Free Number to the 800/SMS Database in or about January 2012.

## COUNT ONE
## PRELIMINARY INJUNCTION
## (AGAINST DEFENDANT BODITION, INC.)

33.    Plaintiff incorporates by reference and realleges each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

34.    Plaintiff is the assignee and exclusive end user subscriber of the Toll-Free Number.

35.    Pursuant to the agreement between Plaintiff and Marchex, Plaintiff retained the exclusive right to use the Toll-Free Number, absent a valid authorization permitting release of the Toll-Free Number to the 800/SMS Database.

36.    At no point did Marchex ever obtain a valid authorization permitting release of the Toll-Free Number from Plaintiff's exclusive control.

37.    On or about January 20, 2011, Marchex released the Toll-Free Number to the 800/SMS Database without valid authority from Plaintiff.

38.    Upon information and belief, on or about January 22, 2011, Bodition improperly obtained the Toll-Free Number from the 800/SMS Database.  At the time, the Toll-Free Number was still in the exclusive possession of Plaintiff, as Marchex had no right to release the Toll-Free Number to the 800/SMS Database.

39.    Plaintiff's right of exclusive use of the Toll-Free number is a highly valuable property interest requiring protection from Bodition's illegal practice of warehousing and hoarding toll-free telephone numbers.

40.     Plaintiff has suffered and will continue to suffer immediate and irreparable harm, because Plaintiff has lost the ability to use the Toll-Free Number in its business activities.

41.     Plaintiff is likely to succeed in establishing that Bodition has improperly obtained control of the Toll-Free Number, which Plaintiff never authorized Marchex to release to the 800/SMS Database.

42.     A preliminary injunction will maintain the status quo by preventing Bodition from using, selling, leasing, transferring control, or otherwise disposing of the Toll-Free Number to another entity or individual.

43.     In balancing the hardships, Defendant Bodition need only desist from using the Toll-Free Number, which was not in use until after Marchex contacted Bodition regarding its control of the Toll-Free Number, when Bodition placed a nondescript recorded message on the Toll-Free Number which fails to identify the individual or business being called and asks callers to simply leave a message.  This would cause no harm to Bodition while Plaintiff has been and continues to be irreparably harmed.

44.     For these reasons, Plaintiff asks this Court to set a hearing for a preliminary injunction against Bodition, restraining Bodition from using, selling, leasing, transferring control, or otherwise disposing of the Toll-Free Number.

## COUNT TWO
## BREACH OF CONTRACT
## (AGAINST DEFENDANT MARCHEX)

45.     Plaintiff incorporates by reference and realleges each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

46.     On September 18, 2009, a Letter of Authorization was executed naming Mr. Fitzgerald the individual authorized to act on Plaintiff's behalf with respect to the Toll-Free

Number, and allowing the Toll-Free Number telephone service provider to be switched from Verizon to Marchex so the Toll-Free Number could be used in the advertising campaign.

47.     The Letter of Authorization designated Marchex to act as the Responsible Organization ("RespOrg") for the Toll-Free Number, recognized that Plaintiff had the exclusive right to use the Toll-Free Number, and named Mr. Fitzgerald as the sole individual authorized to act on Plaintiff's behalf with respect to the Toll-Free Number.

48.     Marchex breached its contractual obligation by releasing the Toll-Free Number to the 800/SMS Database without valid authorization.

49.     By virtue of Defendant Marchex's breach of its contractual obligations, Plaintiff has been damaged in an amount to be proven by trial, including but not limited to damages for lost business and the value of Plaintiff's exclusive right to use Toll-Free Number, a highly visible and memorable toll-free number of significant value to any law firm seeking to advertise their services to potential clients, in an amount not less than $1,000,000.00.

**COUNT THREE**
**GROSS NEGLIGENCE**
**(AGAINST DEFENDANT MARCHEX)**

50.     Plaintiff incorporates by reference and realleges each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

51.     In or about September 2009, Plaintiff was required to switch telephone service providers in connection with the Toll-Free Number from Verizon to Marchex in order to conduct the advertising campaign through C&M.

52.     As Plaintiff's telephone service provider, Marchex had a duty to maintain Plaintiff's telephone service and account related to the Toll-Free Number, including maintaining Plaintiff's exclusive right to the Toll-Free Number.

9

53.     As a company engaged in call tracking and business analytics, Marchex was fully aware of the value of highly visible and memorable toll-free telephone numbers, and specifically the value of the Toll-Free Number to Plaintiff's business activities.

54.     Marchex was fully aware that Plaintiff had the exclusive right to use the Toll-Free Number, and that Plaintiff was moving service for the Toll-Free Number to Marchex for the advertising campaign conducted by C&M.

55.     On or about September 18, 2009, the Letter of Authorization was executed, designating Mr. Fitzgerald as the sole individual with authority to act on behalf of Plaintiff regarding the Toll-Free Number.

56.     On or about September 23, 2009, Marchex began to maintain telephone service connected with the Toll-Free Number for Plaintiff.

57.     Upon information and belief, on or about January 20, 2011, Marchex released the Toll-Free Number to the 800/SMS Database without authority.

58.     Despite Marchex's own drafting of the Letter of Authorization, Marchex wantonly and recklessly ignored the document's contents and released Plaintiff's Toll-Free Number to the 800/SMS Database without any authorization from Plaintiff.

59.     Marchex understood when Plaintiff began to use its services that a highly visible and memorable Toll-Free Number under Plaintiff's exclusive control was being transferred from Verizon to Marchex for the advertising campaign through C&M.  Further, Marchex knew that Plaintiff desired to maintain its exclusive use of the Toll-Free Number.

60.     Marchex failed to follow the terms of its own document by ignoring the provisions of the Letter of Authorization and releasing the Toll-Free Number from Plaintiff's exclusive control without any authorization.

61.     Marchex breached its duty to exercise reasonable care and its unauthorized release of Plaintiff's Toll-Free Number amounts to a failure to exercise a minimal amount of care under the circumstances.

62.     Plaintiff has suffered and continues to suffer damage caused by Marchex's breach of its duty to Plaintiff, because Plaintiff has lost the ability to use the Toll-Free Number in its business activities.

63.     By virtue of Defendant Marchex's gross negligence, Plaintiff has been damaged in an amount to be proven by trial, including but not limited to damages for lost business and the value of Plaintiff's exclusive right to use the Toll-Free Number, a highly visible and memorable toll-free number of significant value to any law firm seeking to advertise their services to potential clients, in an amount not less than $1,000,000.00 as well as punitive damages in conjunction with Marchex's gross negligence in an amount to deter such future conduct, but in no event less than $5,000,000.00.

### COUNT FOUR
### NEGLIGENCE
### (AGAINST DEFENDANT MARCHEX)

64.     Plaintiff incorporates by reference and realleges each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

65.     In or about September 2009, Plaintiff was required to switch telephone service providers in connection with the Toll-Free Number from Verizon to Marchex in order to conduct the advertising campaign through C&M.

66.     As Plaintiff's telephone service provider, Marchex had a duty to maintain Plaintiff's telephone service and account related to the Toll-Free Number, including maintaining Plaintiff's exclusive right to the Toll-Free Number.

67.     As a company engaged in call tracking and business analytics, Marchex was fully aware of the value of highly visible and memorable toll-free telephone numbers, and specifically the value of the Toll-Free Number to Plaintiff's business activities.

68.     Marchex was fully aware that Plaintiff had the exclusive right to use the Toll-Free Number, and that Plaintiff was moving service for the Toll-Free Number to Marchex for the advertising campaign conducted by C&M.

69.     On or about September 18, 2009, the Letter of Authorization was executed, designating Mr. Fitzgerald as the sole individual with authority to act on behalf of Plaintiff regarding the Toll-Free Number.

70.     On or about September 23, 2009, Marchex began to maintain telephone service connected with the Toll-Free Number for Plaintiff.

71.     Upon information and belief, on or about January 20, 2011, Marchex released the Toll-Free Number to the 800/SMS Database without authority.

72.     Despite Marchex's own drafting of the Letter of Authorization, Marchex breached its duty to Plaintiff by ignoring the document's contents and releasing Plaintiff's Toll-Free Number to the 800/SMS Database without any authorization from Plaintiff.

73.     Marchex understood when Plaintiff began to use its services that a highly visible and memorable Toll-Free Number under Plaintiff's exclusive control was being transferred from Verizon to Marchex for the advertising campaign through C&M.  Further, Marchex knew that Plaintiff desired to maintain its exclusive use of the Toll-Free Number.

74.     Marchex failed to follow the terms of its own document by ignoring the provisions of the Letter of Authorization and releasing the Toll-Free Number from Plaintiff's exclusive control without any authorization.

12

75.     Marchex breached its duty to exercise reasonable care by its unauthorized release of Plaintiff's Toll-Free Number.

76.     Plaintiff has suffered and continues to suffer damage caused by Marchex's breach of its duty to Plaintiff, because Plaintiff has lost the ability to use the Toll-Free Number in its business activities.

77.     By virtue of Defendant Marchex's negligence, Plaintiff has been damaged in an amount to be proven by trial, including but not limited to damages for lost business and the value of Plaintiff's exclusive right to use the Toll-Free Number, a highly visible and memorable toll-free number of significant value to any law firm seeking to advertise their services to potential clients, in an amount not less than $1,000,000.00.

## COUNT FIVE
## CONVERSION
## (AGAINST DEFENDANT BODITION)

78.     Plaintiff incorporates by reference and realleges each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

79.     Pursuant to the agreement between Plaintiff and Marchex, Plaintiff retained the exclusive right to use the Toll-Free Number, absent a valid authorization releasing the number to the 800/SMS Database.

80.     At no point did Marchex obtain a valid authorization releasing the Toll-Free Number from Plaintiff's exclusive control.

81.     On or about January 20, 2011, Marchex released the Toll-Free Number to the 800/SMS Database without obtaining a valid authorization from Plaintiff.

82.     Upon information and belief, on or about January 22, 2011, Bodition applied for and improperly obtained the Toll-Free Number from the 800/SMS Database. At this time, the

Toll-Free Number remained in the exclusive possession of Plaintiff, as Marchex had no right to release the number to the 800/SMS Database.

83.     Upon information and belief, the Toll-Free Number was not in use by Bodition until Marchex made inquiries regarding the Toll-Free Number in March 2012. When Bodition learned Plaintiff wanted the Toll-Free Number returned, Bodition placed a nondescript recorded message on the Toll-Free Number to hide their illegal practice of warehousing and hoarding toll-free numbers.

84.     Bodition's control of the Toll-Free Number is in bad faith because the Toll-Free Number is not held for use by any entity, but to warehouse or hoard the number in violation of FCC regulations.

85.     Plaintiff used reasonable diligence in attempting to locate and contact Defendant Bodition to demand the return of the Toll-Free Number, however, messages left by Plaintiff at a telephone number that, upon information and belief, is Bodition's phone number, were never returned.

86.     By virtue of Defendant Bodition's conversion of the Toll-Free Number from Plaintiff's exclusive control, Plaintiff has been damaged in an amount to be proven by trial, including but not limited to damages for lost business and the value of Plaintiff's exclusive right to use the Toll-Free Number, a highly visible and memorable toll-free number of significant value to any law firm seeking to advertise their services to potential clients, in an amount not less than $1,000,000.00.

## COUNT SIX
## PERMANENT INJUNCTION
## (AGAINST DEFENDANT BODITION)

87.     Plaintiff incorporates by reference and realleges each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

88.     Pursuant to the agreement between Plaintiff and Marchex, Plaintiff retained the exclusive right to use the Toll-Free Number, absent a valid authorization releasing the number to the 800/SMS Database.

89.     At no point did Marchex obtain a valid authorization releasing the Toll-Free Number from Plaintiff's exclusive control.

90.     On or about January 20, 2011, Marchex released the Toll-Free Number to the 800/SMS Database without obtaining a valid authorization from Plaintiff.

91.     Upon information and belief, on or about January 22, 2011, Bodition applied for and improperly obtained the Toll-Free Number from the 800/SMS Database. At this time, the Toll-Free Number remained in the exclusive possession of Plaintiff, as Marchex had no right to release the number to the 800/SMS Database.

92.     Upon information and belief, the Toll-Free Number was not in use by Bodition until Marchex made inquiries regarding the Toll-Free Number in March 2012.  When Bodition learned Plaintiff wanted the number returned, Bodition placed a nondescript recorded message on the Toll-Free Number to hide their illegal practice of warehousing and hoarding toll-free numbers.

93.     Bodition's control of the Toll-Free Number is in bad faith because the Toll-Free Number is not held for use by any entity, but to warehouse or hoard the number in violation of FCC regulations.

15

94.     Bodition maintains control of the Toll-Free Number willfully and without the consent of Plaintiff.

95.     By maintaining control of the Toll-Free Number and by placing a nondescript message on the Toll-Free Number only after Marchex inquired about its status to hide Bodition's practice of warehousing and hoarding of toll-free numbers, Bodition has failed to act equitably.

96.     Accordingly, Plaintiff is entitled to a judgment of possession of the Toll-Free Number which Bodition currently controls.

97.     Plaintiff used reasonable diligence in attempting to locate and contact Defendant Bodition to demand the return of the Toll-Free Number, however, messages left by Plaintiff at a telephone number that, upon information and belief, is Bodition's phone number, were never returned.

98.     Plaintiff has been irreparably harmed by Bodition's control of the Toll-Free Number because Plaintiff is unable to utilize the highly visible and memorable number in current and future advertising campaigns.

99.     Plaintiff has also been irreparably harmed by Bodition's control of the Toll-Free Number because potential clients of Plaintiff had this number as their sole means of contacting Plaintiff.  Any calls made by potential clients of Plaintiff after Bodition assumed control of the number were never received by Plaintiff and Plaintiff lost its ability to communicate with these potential clients.

100.    Plaintiff seeks permanent injunctive relief returning the Toll-Free Number to Plaintiff's exclusive control, and damages in an amount to be proven at trial for lost business during the time Bodition had control of Plaintiff's property.  In the alternative to the return of the Toll-Free Number through injunctive relief, Plaintiff seeks damages for the value of Plaintiff's

exclusive use right to use of the Toll-Free Number, a highly visible and memorable toll-free number of significant value to any law firm seeking to advertise their services to potential clients, in an amount not less than $5,000,000.00.

**WHEREFORE**, Plaintiff respectfully prays for relief and that the Court grant judgment against Defendants as follows:

    a) On Count One, as against Defendant Bodition, set a hearing for a preliminary injunction against Defendant Bodition, restraining Bodition from using, selling, leasing or otherwise exercising or transferring control of the Toll-Free Number to any entity;

    b) On Count Two, as against Defendant Marchex, award Plaintiff damages in a sum to be determined at trial, but in no event less than $1,000,000.00, together with interest thereon, costs of the suit, and reasonable attorneys' fees;

    c) On Count Three, as against Defendant Marchex, award Plaintiff damages in a sum to be determined at trial but in no event less than $1,000,000.00, together with interest thereon, costs of the suit and reasonable attorneys' fees, and punitive damages in a sum to be determined at trial but in no event less than $5,000,000.00;

    d) On Count Four, as against Defendant Marchex, award Plaintiff damages in a sum to be determined at trial but in no event less than $1,000,000.00, together with interest thereon, costs of the suit and reasonable attorneys' fees;

e) On Count Five, as against Defendant Bodition, declaratory relief finding that Bodition improperly converted Plaintiff's exclusive use of the Toll-Free Number, and award the Plaintiff damages in a sum to be determined at trial but in no event less than $1,000,000.00, together with interest thereon, costs of the suit and reasonable attorneys' fees;

f) On Count Six, as against Defendant Bodition, permanent injunctive relief returning the Toll-Free Number to the exclusive control and use of Plaintiff, or alternatively, damages in the amount of the value of the exclusive use of the Toll-Free Number, and damages caused by Plaintiff's loss of the Toll-Free Number in a sum to be determined at trial but in no event less than $5,000,000.00, together with interest thereon, costs of the suit and reasonable attorneys' fees.

## JURY DEMAND

Plaintiff hereby demands a jury trial as to all issues in this suit.


Dated: May 24 , 2012

                     Lewis J. Saul, Esq.
                     Kevin M. Fitzgerald, Esq.*
                     Edward A. Coleman, Esq.
                     LEWIS SAUL & ASSOCIATES, P.C.
                     183 Middle Street, Suite 200
                     Portland, ME 04101
                     Phone: (207) 874-7407
                     Fax: (207) 874-4930


                     * pro hac vice

                     *Attorneys for Plaintiff Lewis Saul & Associates, P.C.*